Good morning, your honors. Michael Powell on behalf of the appellant, Mr. Soberanis. This is a case about search and seizure and whether or not there was reasonable suspicion for the officers to pull the vehicle over. The second issue that was presented was whether or not the lower court should have conducted an evidentiary hearing to decide these matters. So what we have here before the court and the only facts that we have are presented in a transcript of some air traffic between the police officers. There was a bank robbery there. And what we have motion to suppress. But there was no evidentiary hearing. That's correct. Yes. The magistrate made his report and recommendation based on the transcript that's in the excerpt of records. And most importantly, page 34, it's attached to the motion there and it's in our excerpt, your honor. Now, what we have here is the bank robbery happened in on the east side of Las Vegas. And there was conflicting reports coming out. Now, just prior to counsel, what I was thinking about this, I was thinking, suppose there was an evidentiary hearing. What we'd hear is that there are all sorts of conflicting reports. And you had kind of a weak tip. But on the other hand, you have this vehicle leaving the scene of a bank robbery. Either you catch him now or you're not going to catch him. Why isn't it pretty much a sure thing that there would be reasonable suspicion even if you did have a hearing? Well, your honors, I understand what number one, it was conflicting stories. They didn't know it was conflicting stories. But more importantly, they had almost no information whatsoever. They had a mini have one thing. Even if you take the conflicts, we know that we had some black individuals, African-American individuals involved in the robbery. Correct. Correct. We know that there's a minivan. The exact color of the minivan, we don't know. And we know when the robbery happened. That's for certain, that there was a robbery. And we know the location and the relative. It's relatively short after. Now, I mean, I'm just saying we know all those things. Then the things that are conflicts, you know, the colors of the shirts, the colors of the vans, you know, all of those things. But, you know, having those two components close to the robbery at a time shortly after the robbery, why can't the police just stop and see, you know, identify the people? And that's what they were, you know, that's what happened. And then later, but right when they identify them, there's other people in the car. And so it turns into they're lying down in the van, right? So it turns into something else. I mean, it seems to me, wouldn't an officer be remiss if he didn't stop that van and at least identify the individuals? First, Your Honor, I would like to say it was okay. It happened at 4.30 in the afternoon. Eastern Avenue, which is the one that they were telling me, is the main arterial road on the eastern side of Las Vegas. It has six lanes, three in each direction. It's quite a heavily traveled street. Now, so what you're suggesting now on this information that the police are entitled to stop any minivan on Eastern Street that's in the general vicinity. Now, that's one of the problems that I have with the particularized information here. Well, no, but it was also there was someone, you know, while you can't stop someone just for your race, there is case law to say that it could be relevant if the description, say if the description were Asian people or the description were Caucasian people and it's an African American driving the van, well, then that puts it in a different category. But the description of the robbers were that they were African American, right? I have two problems with that. Number one, there's this description of a female driver, no race attached. We don't know if the driver, at least the reports were that the person that dropped and was driving the vehicle eventually was female and was never identified as white, black or any other color. So now we're automatically stopping every black person, even though there's been no description of the actual driver of the vehicle as black. Could they have had a roadblock like they do for muscular dystrophy, you know, where the fireman blocked the road and pulled out the boot and you have to put a dollar in? No, Your Honor, because Could they have done that and stopped all the traffic that's going away from the bank? I believe the Supreme Court has told us that once you're looking for a particular crime, you can't put up a roadblock like that. The other problem I have with the vehicle description is this. There is no make. Perhaps, I think the minivans are perhaps one of the most ubiquitous cars we have in our society. I can name off the top of my head at least 12 different makers of minivans. Now, so are we saying that every minivan on the road, we don't have a year, we don't have a make, they can stop because there's a black person driving and there were suspects that were black? We don't even know, number one, what the color of the driver was. And in fact, it's the wrong gender. Well, wasn't the description in the police dispatches that this minivan was black, dark green, or blue? Dark green, blue, turquoise. I mean, there were several colors here, Your Honor. And so what we're saying, it was a dark color, unspecified model minivan driving down eastern. And so we have a black person, and that describes an awful lot of vehicles. And I don't believe that that is particular enough nor individualized enough to support reasonable suspicion to stop every vehicle that matches that description. And I think that's the problem here. And, you know, part of it, I think it's difficult for this court to review this because there wasn't an evidentiary hearing, because there are all of these other facts that might have been brought up. And I think one of the problems is that perhaps the magistrate took some judicial notice of some of these things because he lives there, which the district court judge probably couldn't because he doesn't. He's from Reno. So that's one of the problems we have here. We have all of these other factual components that go into this that were never presented. But I still think that without a make or a model, they don't even have a license plate number. They don't even say whether the license plate was in-state or out-of-state. I'm thinking it's kind of hard to get the bank robbers to wait while you copy down their license plate number. Well, no, I understand that. People don't get good descriptions of things that happen fast. And I can't see what the burden is to just stopping vans that are a very rough fit with a very rough and conflicting description. So what we're saying is I think what you suggested, Justice Klein, for every bank robber we have a roadblock in the general surroundings in a city of 1.8 million people and stop every car coming out of that. It's not going to happen because police departments don't have that kind of budget. But if you had bank robberies and you had that kind of budget, it's not like just a general roadblock where they're looking for any kind of crime, which is unconstitutional. And it's pretty specific and based on some crisis event that just happened. But I still don't think it's not specific enough nor individualized enough to come to reasonable suspicion to stop that particular vehicle based on that description. And I think that's really the case because the court in him has to have some standard. Black, dark green or blue. One of my cars looks black in the winter and it looks metallic blue in the summer. You can't tell it's blue unless you have real sunlight on it. And I don't have so much of a grunt with the particular color itself. But what I have here, the last thing that we have in the dispatch tape, and this is at UR 34, it says one of the officers is on the line and he says, at the Bank of Citizen Advice, it's a green minivan and they were dropped off by a female, I believe, and then the suspects got back into the van. So then, and I take this, it's the officer that stopped it and I don't know where they ended up getting his name. He says, okay, this is going to be a dark blue minivan, but we're still going to check him. So based on, he's just been told it's a female driver and it's a different color and he's behind a vehicle and says, well, I'm going to stop it anyway, even though this doesn't match the description, it isn't anything that you just told me, I'm just going to stop this because it's in front of me. And I don't believe that that's an objective nor a particularized nor an individualized standard that the Fourth Amendment allows them to interfere with that citizen's travel at that particular time based on that information. And I see I've burned all my time, so I have 30 seconds left. Maybe I might give him one word of rebuttal. Thank you, Counsel. Good morning. My name is Karen Kenny and I represent the United States Attorney's Office in the District of Nevada. Your Honor, first with respect to the first issue that was raised, whether or not the underlying magistrate judge abused his discretion by not holding a hearing. He clearly did not. A magistrate judge is given the power recognized by this court in the Howell case. I apologize. Is that yours? That is, and I apologize. That's outrageous. If it weren't for the damage to the architecture, I'd suggest throwing it right out. It's going to be damage to my husband. That's who had actually called. I told him not to call until an hour. I apologize. Getting back, Your Honor, this court has recognized in Howell that a hearing is not given simply because the defendant wants one. Counsel, I don't remember ever having a motion to suppress where there wasn't an evidentiary hearing, and I can't remember that I ever researched the law on it because it was just the way things work. What is the law that governs in this circuit on whether the judge or magistrate judge has to have an evidentiary hearing? Under Howell, Your Honor, in addition, there's a case that was before this court, Mejia, M-E-J-I-A. Both of them state, Your Honor, that the defendant in his moving papers must raise specific, detailed, contested factual dispute in order to have a hearing. A hearing is not simply given because they request it or to be in the court. Why wouldn't they have that just because they showed that there were conflicting descriptions, arguably insufficient for reasonable suspicion? Well, I think, Your Honor, that is the argument made by the defense, but I'm asking this court to draw a distinction. The facts themselves are known. They were known to the court both in the transcript. That was so easy if you had a hearing. Put the policeman on. Why did he stop this car? Well, Your Honor. He says why he stopped it, and the magistrate judge says, well, good enough. The magistrate judge has before him the actual recording, Your Honor, so he's able to hear all the facts that were known. Why have a hearing? The defense asked for a hearing to test the credibility. That's not what the hearing is for. The hearing is for a contested issue of facts, both the government and the defense. In fact, in the defense motions in their footnote 4, they adopt the facts. They say we're going to use these facts. The facts are not in dispute, Your Honor. What is in dispute is the defendant cannot raise or cannot demand a hearing based upon inconsistencies of those underlying facts. The facts have never changed, Your Honor, and that's why the magistrate court did not abuse its discretion in deciding not to have a hearing. But the facts that didn't change were conflicting descriptions. And the court was aware of that. But even if the officer didn't hear the policeman articulate why he stopped the van, we can make up a reason for him to stop the van. Well, if you look at the case of Nisus v. Wren, Your Honor, W-H-E-N, it states that the subjective intent of the officer is irrelevant. The Fourth Amendment analysis was controlled by an objective. The reasonable suspicion standard set forth both by the Supreme Court and Cortez, Your Honor, states that it's a two-part analysis, first in determining what is reasonable suspicion. You first look at the specific facts known at that time. Then, having looked at those specific facts, you look at the reasonable inference that can be drawn from them. And then in totality of the circumstances, was it a reasonable stop? What the officer specifically is thinking subjectively is irrelevant. The facts known at that time were known to the officer. The only issue raised by the defense is the issue of the red shirt, Your Honor. The defendant in its reply brief says, well, we don't know whether or not the officer knew about the red shirt. But I would direct the Court's attention to the magistrate's opinion. He doesn't even speak about the red shirt. He lists on page 3 of his opinion specifically five facts that show that the officer at the time he stopped had knowledge of these specific facts. And as the Court has already noted, it's the time it was stopped, within minutes. The proximity is within three miles of the bank robbery. Not only the direction was known, northbound, but also the street, the very street, eastern. The fact that there was a minivan, and this Court has already acknowledged that it's all dark colors. And what is consistent is that it's always a minivan. It's never a truck. It's never a convertible. It's always a minivan. And the fact that a driver was noted as being a male African American. Those are all the specific facts known. Again, when you look at the governing case law, including the Hensley case, it states that what we need to do and what I'm asking this Court to do is to recognize that the balance of the intrusion, the intrusion on the private citizen was an investigatory stop. That you balance that with the governmental interest. And here we have an armed bank robbery where citizens were subject to two men robbing them at gunpoint. When you balance the intrusion of a mere stop against the government interest in both apprehending and dealing with this violent crime, I think there is absolutely no issue whatsoever this was a valid stop. Any more questions from the Court? Thank you for your time. It's not your husband's fault for calling. It's your fault for not turning off your cell phone. You are correct, sir, and I should not blame my husband. I apologize. And I do apologize to the Court. I thought I had done so. Counsel, you have 30 seconds. Just one thing. Wren was based on a traffic stop. What the Supreme Court said in Wren was, look, we don't look at the subject as you can. As long as they see a traffic violation, that establishes probable cause. That doesn't affect the reasonable suspicion analysis because we're going to. How about that Howell case? Well, we still need to know what the officer knew, Your Honor. And I think if the Court looks at the transcript, you'll see that it's not really clear what everybody knew at the same time. They were having a problem getting on the same channel. So we don't really, and that's the point of the hearing. What did the officer know? I mean, in most of the other cases, the officer is following someone while they looked in the mirror. They did something else. We do not know what the timing is here when it stopped. There's nothing in this that says he stopped him at a certain time. We know when the bank robbery occurred. We don't know when they stopped him. We don't know how far it was. The judge said that it was three miles. I guess he went out and timed it. But we don't know that either. At least I don't. I know what the cross street was, but I don't have a clue how far that is from Flamingo or Tropicana. So all of those facts really are not in the record. And I agree with you, Judge Kleinfeld, when you're a district court judge, you have a hearing. You need to have these facts. It makes it a lot easier for the reviewing court to make these kinds of determinations. We didn't have that here. And thank you.   United States v. Soberanus is submitted. Williams v. Helling is submitted.
judges: Oakes , Kleinfeld, Callahan